Letter by Kwon, John Hyungjun, MD on 8/29/2018


**UTSouthwestern**
Medical Center

**Digestive & Liver Diseases Clinic**
Clinic Phone: 214-645-0895

August 29, 2018

To Whom It May Concern,

The patient has been under my care in the Gastroenterology Clinic at UT Southwestern Medical Center with a history of Ulcerative Colitis and with subsequent total proctocolectomy and formation of ileal pouch anal anastomosis complicated by frequent intermittent obstruction, pain, fatigue, bleeding and iron deficiency anemia. Since the previous letter in 2/2018, the patient's symptoms have necessitated hospitalization (6/11/18 to 6/14/18) and currently requires continued antibiotics and iron infusions as well opioids for pain management and treatment for ongoing gastritis. The patient at this time is unable to work due to discomfort, urgency, fatigue and symptoms of obstruction. The patient was instructed to not resume work and it is anticipated that her symptoms may continue indefinitely.

To discuss this case, I can be conveniently reached via my cell phone at (         )

Sincerely,

John H. Kwon, M.D.-Ph.D.
Associate Professor
Director, Inflammatory Bowel Disease Program
Director, Clinical and Translational IBD Research Core

Outpatient Building, 1801 Inwood Rd / Dallas, Texas 75390-9083 / Fax: 214-645-0581/ utswmed.org

# Chapter 74 Report of Medical Expert Opinion
# On The Care Of Damaris McCalley
# By Lyndsey Willie FNP-C

I, Lyndsey Willie, am a medical professional over the age of 18, of sound mind and good standing. I have current certifications to practice medicine as a nurse practitioner FNP both in the state of Texas and Louisiana. I have been an FNP for 6 years and a nurse for ten years prior to that. I have worked in various hospital and urgent care settings as well as private practice. I have given prior expert witness testimony. I have reviewed the medical records provided to me by patient Damaris McCalley.

The standard of care as a nurse involves thorough documentation. Standard of care things to document in the medical record and monitor in patient care are vitals, symptoms, drain status, wound appearance, oral intake, measure voids of bodily functions, pain levels, potential allergic reactions and to notify physicians accordingly. If a problem is noted it should be followed up on. It is the job of the nursing staff to administer medications ordered in a timely manner and to try to make sure a patient's pain level is tolerable, do what can be done to alleviate suffering and if medication isn't working or sufficient to notify a physician. Another role of the nurse is to meet patient teaching and hospital goals set throughout hospitalization and follow safety and discharge protocols. A patient has a right to know the full extent of their medical treatment, inspect their medical record on request and obtain a true copy within timelines outlined in HIPAA, HB 300 etc.

It appears there have been several negligent errors, omissions and inconsistencies in the documentation of her care during the hospitalizations at Methodist Southlake Hospital in stays 4/26/2017-5/5/2017 and 8/7/2017-8/9/2017. Her record shows a lack of administration of pain medicine which resulted in her being in unrelieved pain. Had her urine been measured and her burning, hesitancy, pain and abnormal color been followed up on by performing follow up bladder scans (only one was performed and it indicated a problem), x-rays, CT's, urine cultures etc. by nurses and physicians the duration and severity of her complications and pain and suffering could have been lessened. Damaris McCalley does not appear to have been properly educated as to her care or what to expect of her surgical procedures as she had unresolved knowledge deficits during both hospitalizations in 2017 at MSH. In my opinion the failures to meet standards of care laid out in my second paragraph limited her access to care and resulted in bad outcomes. In addition it is not normal to text images of patient medical records via SMS and

that may constitute a HIPPA violation. Scott Smith was not apparently Damaris McCalley's treating physician and according to Damaris she had terminated physician patient relationship with treating physician Dr. Clifton Lyndell Cox II by the time Cox's email alleges the communications occurred. I believe further investigation during a trial or discovery is warranted. It is my opinion that the Methodist Southlake Hospital did not comply with laws regulating the timeline and extent of release of medical information. Furthermore, parts of her record may have been falsified. This has been a great source of emotional stress and frustration for Damaris in her concerns for privacy, understanding what occurred to her, continuity of care and ability to obtain justice.

Lyndsey Willie, FNP.

*Lyndsey Willie FNP*

3/3/2020

exhibit A



**Arlington**
**5005 S. Cooper St., Suite 250**
**P: (866) 367-8768 F: (817) 887-5979**
**Arlington, TX 76017-5996**

July 29, 2019

Dear Damaris Mccalley,

I am writing to inform you that I have reviewed your retained medical records. I would agree that you have merit in making official legal complaint about your initial urologic care immediately following ureteral injury.

Yours truly,

**Tony Mammen, MD**
866-367-**UPNT** (8768)
**www.UPNT.com**
**FAX:** 017-541-9540

CAUSE NO. 02-20-00411
formerly
017-312809-19

PLAINTIFF:                                          IN THE DISTRICT COURT OF
DAMARIS MCCALLEY                                    TARRANT COUNTY, TEXAS
VS:
DEFENDANTS:
DR. CLIFTON LYNDELL COXII;                          17th Judicial District Court
METHODIST SOUTHLAKE HOSPITAL;
RADIOLOGY ASSOCIATES OF NORTH TEXAS
FOR SCOTT SMITH AND DUSTIN DUY NGUYEN;
DR. ABIODUN;
DR. YAIR LOTAN;
AND UT SOUTHWESTERN HOSPITAL

---

## **Additional Documentation Necessitating Court Appointed Attorney**

      Here is the letter by Jack Cockburn I had previously lost in filings, the courts already had these but I'm sure they were buried in filings from long ago. Furthermore, I had a psychiatrist appointment today and I was not aware of this but my Anxiety has indeed now been elevated and diagnosed as Accute Anxiety Disorder which is similar to PTSD and has the same syptoms except PTSD is only for people who's traumatic event is over and mine is continuous. So mine is actually worse. It will take me a few days to get those records. My depression has also worsened to being almost immune to medication so our next steps are shock therapy and ketamine infusions if we cannot get a response from adding another medication which we had to do.

      I love my therapist Beth Morale and was seeing her once a week but it is apparent that it is not helping as my situation about knowing what happened to my body is not improving but getting worse, and the Government is colluding with the bad actors to keep me from getting to Discovery and uncovering all my medical records/ what was done to me as

is my Federal and Human Right. She says I require a therapist specifically trained in continuous trauma. Reading pages and pages of rules and case law not only mentally fatigues me and triggers my ADD, Depression and frustration but it actually traumatizes me and affects my day to day functioning so badly that it affects my health and ultimately the task ends up fogged and incomplete. I cannot fairly and properly respond to case law, use case law, read all the cases and comply with the Civil, Federal and Appellate Rules properly and to make me abide by the same rules as mentally fit attorneys without legal consel kills my case and my ability to exercise my civil rights as any other individual. I cannot figure out appellate briefs and I tried twice already and failed with the Texas State Court. I have watched youtube videos and I still don't get it. Actually to mock my disability the two female Federal Judges over two of my cases (this one and the one against the Southlake Police for forging evidence to dismiss my forgery case into Cox and Methodist Southlake Hospital) Boyle argued that I made no sense and the other (whose name I forget ) said my claim was convoluted, made no sense, mocked my gender repeatedly, purposely when my complaint stated I am a woman and tried to Dismiss With Prejudice very valid claims of violations of Federal Rights against the Southlake Police Department and Disability Rights Texas who both owed me a duty of service and had agreed to help me. My second suit did make sense, Boyle, the Southlake Police and Disability Rights Texas all were violating my Civil Rights because I was disabled by powerfull doctors and a Government Hospital, UT Southwestern and they didn't want the truth to come out. That is marked discrimination based on Disability. I believe the fact the second judge only mocked my gender by repeatedly using male pronouns and calling me a man, or he, which Federal Judge Horan did as well in the beginning because the Texas Medical Board had done so and still does so to this day. It is something which triggers me, or at least they think it does, so they do it to signal that I will not go far with them either. My cries for help are falling on deaf ears because they are listening so little they cannot even tell I am a woman who birthed two children vaginally.

PTSD both causes and is a form of brain damage. My brain is not like that of the other attorneys. Trauma injures the way your brain communicates signals and keeps you in a state of stress, fear and flight or fight. Many combat veterans get it and are injured for life. This is what the

legal system in Texas is purposely doing to me to try to keep me silenced. It is a form of cruel and unnusual punnishment and abuse of a person with disabilities to not grant me an attorney under the ADA. Mental trauma is different for everyone so nobody can speak to my specific case by bringing up the Tolbert case. For example I would NEVER curse out a judge especially in front of my child except I was to that pain level and I knew what her denial meant..basically the person who illegally shut my case to begin with was purposely allowed by the appellate court to shut it for good by playing on my mental deficiencies and lack of even graduating high school. An Appellate Brief is like a Rubiks Cube to me. I don't understand what the parts stand for or mean in context. You cannot make me fight on the same playing field as the attorneys for the doctors who damaged me. My brain is not whole and the damage is continuous and ongoing. I need an attorney. I can get the documentation on my new diagnosis after I make records requests, I guess it has been that way for a bit, I just didn't know it. Exhibit Number 3 shows how badly this has been messing with my mind, all the lying, all the coverups, the stonewalling and evasiveness once I was starting to put together the operations without consent. Let us be clear, that is a CRIME for which nobody is being prosecuted because the Attorney General keeps illegally closing investigations.

I am the first Pro-Se Litigant ever to challenge Chapter 74 Tort Reform in Federal Court as denying access to the legal system, attorneys for meritorious cases and constituional trial by jury for amounts exceeding $20, Rule 26 of Discovery, the Emoluments Clause and Equal Protections Clause as doctors who hurt people are protected more then their victims. That is how you get doctors like the infamous Christopher Dunstch "Dr. Death" just murder people in Texas and why our healthcare ranks about last in the nation. My case will set a precedent when it makes it to the Supreme Court which is probably why every Judge and Court is trying to stop me by breaking Judicial Conduct Laws and Laws regarding Due Process and attempting to deny me legal council which I medically need. I cannot just quit this case and not know my surgical history. Disability Rights Texas was going to help me reach Discovery until someone got to them, whether it be the Attorney General or what. A law clerk told me I needed to bring a Quitam (not how it's spelled I'm sure) suit on behalf of the United States against the actors named in this suit and the Federal Court in Dallas because I am right about what's happening and that

individual knows more than I do. They said keep going. I'll have to soon I'm sure should this continue. I found the following passage online in the Seattle Journal For Social Justice. Pardon my bad citations, I didn't graduate high school.:

I. COURTS VIOLATE THE ADA BY DENYING APPOINTED COUNSEL AS A REASONABLE ACCOMMODATION FOR CERTAIN DISABLED CIVIL LITIGANTS.

More than 49.7 million Americans, roughly one in five of the 257.2 million people in the United States age five or older, have mental or physical disabilities or other long-lasting impairments.22 Before the enactment of the ADA, Congress recognized that current laws were "'inadequate' to combat the 'pervasive problems of discrimination that people with disabilities are facing.'"23 As a result of this discrimination, Congress enacted the ADA in 1990, seeking to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."24

Title I of the ADA addresses discrimination in employment and applies to "persons engaged in an industry affecting commerce" who have at least fifteen employees (the United States and bona fide private membership clubs other than labor unions are exempt).25 Title II addresses discrimination in public services and applies to state and local governments,

their departments, agencies, and other instrumentalities.26 In fact, Title II covers all public agencies, regardless of whether they receive federal financial assistance.27 Title III of the ADA addresses discrimination in places of public accommodation and services operated by private entities.28

Businesses governed by Title III include banks, restaurants, supermarkets, hotels, shopping centers, privately owned sports arenas, movie theaters, private day-care centers, schools and colleges, accounting or insurance offices, lawyers' and doctors' offices, museums, and health clubs.29 Title IV of the ADA addresses telecommunications, including closed captioning and relay services for people with hearing impairments.30

Denying appointed counsel for certain disabled civil litigants violates Title II, the Public Services section, of the ADA.31 Title II prohibits discrimination against disabled individuals in public services.32 Specifically, Title II provides that, "no qualified individual with a disability

ACCESS TO JUSTICE—A CALL FOR CIVIL GIDEON

shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity,33 or be subjected to discrimination by any such entity."34 State courts, as public entities, must comply with Title II of the ADA35 by ensuring that all of their services, programs, and activities are available to qualified individuals with disabilities. Federal courts must meet the same standard under Section 504 of the Rehabilitation Act.36 In fact, Title II of the ADA was "expressly modeled after"37 sec. 504 of the Rehabilitation Act

of 197338 and extends those principles to state and local governments.39 Failing to make state court facilities available to disabled individuals violates the ADA, while failing to make federal court facilities available violates the Rehabilitation Act.40

In this article, we argue that the denial of equal justice and fair treatment before the courts applies with equal vigor when a person's mental or physical disabilities prevent him not from mounting the stairs to the courtroom, but from mounting the case itself. Here, the appropriate and reasonable accommodation is attorney representation rather than elevator access to the court proceedings.

The failure to make court facilities available to disabled individuals also violates the Washington Law Against Discrimination (WLAD).44 Generally, WLAD bans discrimination on the basis of "any sensory, mental, or physical disability."45 Further, the WLAD makes the right to be free from discrimination a civil right46 and protects "the right to the full enjoyment of any of the accommodations, advantages, facilities, or

ACCESS TO JUSTICE—A CALL FOR CIVIL GIDEON

privileges of any place of public resort, accommodation, assemblage, or amusement."47 The ADA provides guidance for interpreting a public entity's obligations under WLAD.48

To prove that a public program or service violates the ADA, a litigant need only show that (1) she is a "qualified individual with a disability"; (2) she "was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity"; and (3) "such exclusion, denial of benefits, or discrimination was by reason of his [or her] disability."49 After a litigant establishes discrimination by a public entity under Title II, the court must determine the appropriate remedy.50

The ADA provides three ways to prove that a litigant is a "qualified individual with a disability." A "person with a disability" is defined as

someone who has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."51

The regulations require that these services,

"when viewed in [their] entirety," be readily accessible to and usable by individuals with disabilities.52 Exceptions exist only when compliance results in "undue financial or administrative burdens" or results in a "fundamental alteration" in the program.53 The public entity must also provide notice to individuals with disabilities of the "protections against discrimination assured them" and "disseminate sufficient information" to those individuals "to inform them of the rights and protections afforded by the ADA."54 Altogether, "the program access requirement of Title II should enable individuals with disabilities to participate in and benefit from the services, programs, or activities of public entities in all but the most unusual cases"55

\*\*\*\*\*\*\*\*\*\*\*\*Neither the State or Federal Court Did So!!! They did not fulfill their requirements. They offered me NO help at all! Nor did they inform me of my rights."\*\*\*\*\*\*

Trial courts, as services within the meaning of Title II,56 must provide these protections.

The third step in establishing disability discrimination under Title II requires showing that such exclusion or denial of a service or benefit was by reason of an individual's disability.57

Courts fail to make their services accessible to litigants who are not able to use the system effectively because of mental or physical impairments. Meaningful access does not exist when a litigant's inability to understand or to participate in proceedings becauseof a disability surpasses the mere confusion many lay persons experience when participating in the legal system. As the Honorable Robert W. Sweet, in proposing full civil Gideon, has noted:

As every trial judge knows, the task of determining the correct legal outcome is rendered almost impossible without effective counsel. Courts have neither the time nor the capacity to be both litigants and impartial judges on any issue of genuine complexity. As recognized by the Lassiter dissent, "By intimidation, inarticulateness or confusion, a [litigant] can lose forever" the right she sought to protect.58

When confusion stems from a disability, Judge Sweet's admonition carries even more force. A disabled litigant may be physically present in the courtroom but have little understanding of the law and proceedings and little ability to advocate for her rights. A factual showing that a litigant does not understand proceedings and cannot meaningfully participate because of a disability compels the court to consider providing reasonable accommodations.59

*** As a matter of fact I tried to make Melody Wilkinson who was the judge in the State Case who discriminated against me that I was not late to the hearing, I had to leave because I needed to use the restroom as I have Crohn's Disease. I had told the Bailiff why I needed to leave and it was a restroom issue. While I was on the toilet my phone was going off and my sister Suzanna McCalley, Caiti Dormovig and Sheila Hemphill all texted me that the Judge Wilkinson was trying to dismiss my case before it started for using the restroom. So I couldn't finish when I was having a flare of bloody diahrreah and was quite uncomfortable the rest of the hearing. She did NOT care or listen. I also asked her to please accommodate my severe Anxiety by not making me present first before the other attorneys and she refused to accommodate me so I was very flustered. She smiled almost laughed when I discussed my disabilities and all my witnesses asked me what was wrong with her. Why she was mocking me. I had to directly ask her to stop doing so at several points because it was severely upsetting. I requested video of the hearing to let others see what she did and her court refuses to produce the video, I believe for that reason. There also appear to be entire portions of dialog missing. Anyways there have been many times where I don't understand something or a rule and then the court will tell me to read a handbook that is a million pages long or a local rule and I just cannot do it because it isn't the way my brain is wired. I can't explain my neurology to the court but they know I'm not firing on all cylinders and have marked disabilities and this is why my doctors and therapists wrote letters to the court. This is why the burden of proof is not on the Disabled for "Extraordinary Proof" as Horan, Boyle and Wilkinson falsely contended and gave me BAD LEGAL INSTRUCTION to do. It would be difficult for me to meet ordinary standards, much less extraordinary ones. They actually set the bar higher for me than for others.*******

 A public entity, including a court, must reasonably accommodate a qualified individual with a disability.60 Mere equality of treatment is insufficient.61
Upon receiving a request for an accommodation, a public entity's duty is

well settled by state and federal case law and by the applicable regulations.62 First, the public entity must undertake a fact-specific investigation to determine what constitutes a reasonable accommodation and must provide the criteria by which to determine whether the evaluation is adequate.63 The ADA and the Rehabilitation Act attempt to provide whatever services or actions are necessary to ensure that disabled persons are not discriminated against as a result of their disabilities. One court noted, "mere speculation that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; the Acts create a duty to gather sufficient information from the disabled individual and

qualified experts as needed to determine what accommodations [are] necessary."64

***My therapist who actively treats me Beth Morale said I need an attorney or the court will cause me adverse health consequences. I DO need an attorney.***

Necessary accommodations include effective courtroom communications: "a public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others."65 Appointment of counsel, which would allow the individual with a disability to communicate with the court, could qualify as a reasonable accommodation because it is similar to the following sample aids and services provided in the regulations:

1. Qualified interpreters, note takers, transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments [for example, talking calculators and real time transcription];

2. Qualified readers, taped texts, audio recordings, Brailled materials, large print materials, or other effective methods of making visually delivered materials available to individuals with visual impairments;

3. Acquisition or modification of equipment or devices; and other similar services or actions.66

This extensive list and the final, separate category for "other similar

services or actions" suggest a broadly-based evaluation of appropriate auxiliary aids and services. These services include the assistance of trainedindividuals, such as sign-language interpreters for the deaf and readers for the blind.

***I don't sleep much anymore because having to do all this work on these cases without an attorney takes so much time and causes me so much stress. I have nightmares and it retraumatizes me. A victim should not have to try her tormentor herself. I was operated on my pancreas and kidney without consent. Can you imagine how awful to not get an attorney due to Tort Reform? Then the courts violating the ADA to not help you file things properly?***

Appointed counsel for some litigants with certain disabilities would serve the same interpretive function and would allow the litigants to participate in the proceedings.
Appointed counsel would not be necessary for all litigants who suffer from certain disabilities. For this reason,
the ADA does not prescribe the appropriate accommodation for each disability because an appropriate accommodation for one person might be inappropriate for another. For example, while one visually-impaired person might need a reader, another might need materials in Braille.67 The public entity, however, must consider available options and furnish "appropriate auxiliary aids and services where necessary."68 In determining the appropriate aid or service, the public entity shall give "primary consideration" to the requests of the individual with disabilities.69 Accordingly, a court cannot offer a blanket accommodation for all individuals with a specific disability; it must consider the particular individual's need when determining which accommodations are reasonable.70
For some litigants with disabilities—those who cannot understand or participate in the legal proceedings—interpreters are the only appropriate accommodation. Other options would not ensure that a court's communications with such individuals are "as effective as communications with others,"71 as required by law.72 For example, although one commentator has suggested that the best current option for providing legal assistance for the poor lies in improving pro se assistance projects, 73 that
proposal would provide no benefit to litigants whose disabilities impair their ability to understand or to partake in the legal process.

Prayer For Relief: Provide me an attorney in accordance with the American With Disabilities Act.

Certificates of service: Sent electronically on Friday at 1:24 am, June 18th 2021

E-Filed and Signed on June 18th,2021
Damaris McCalley
Pro Se Litigant
(682)552-6623
1335 Lark Lane
Lewisville Texas 75077

# Exhibit 1

11/24/20

To:     Ahmed Bashir, M.D.
        c/o Medical City McKinney
Re:     Damaris McCalley
DO: 01/03/88
682-552-6623


From:  Jack Cockburn, Ph.D.


Dear Dr. Bashir,

        I am forwarding this letter to affirm that the above patient was present on the date above to assess current mental status for an Axis I or II diagnosis.  I have identified below the areas of concern for this patient.
        Current Functioning-The patient is currently assessed with the following:
Axis I-F90.0 Attention Deficit Hyperactivity Disorder, Predominately Inattentive
Inattentive is marked by the following:
Often does not have ability to attend to details or makes careless mistakes in tasks
Trouble keeping and/or maintaining attention and concentration
Organizational difficulties
Forgetful
Easily distracted
Often loses necessary items for tasks
Avoids or dislikes tasks requiring an extensive amount of mental effort for an extended amount of time
Does not follow instructions or fails to finish tasks (not due to oppositional behavior or failure to understand)
Does not appear to listen when spoken to directly

Axis I-F41.0 Panic Disorder w/o Agoraphobia
Axis I-F32.1 Major Depressive Disorder, Single Episode. Moderate
Axis I-G47.00 Insomnia Disorder
Axis I-F31.81 Rule Out Bipolar II
Axis I-F43.12 Rule Out Post-Traumatic Stress Disorder
Axis II-None
Axis III-Deferred to Treating Physician (Medical Records Pending)
Axis IV-Medical Problems
Axis V-GAF 75
Speech -WNL
Insight-Age Appropriate
Appearance-WNL
Affect/Mood-Episodic anxiety/mood variations exhibited and reported by patient
Perceptions-See Axis I
Orientation-x3
Memory-Recent and Remote, Mild deficits
Thought Content-See Axis I
Judgement-See Axis I

Diagnosis validated on DSM 5 interview; Patient reported Medical Narrative History
Brief Overview of current Medicine Protocol:
Trileptal 300mg.x3=900mg. HS
Addderall IR 30mg. QD
Buspirone 15mg.
Amitriptyline 50mg. HS
Trazodone 50mg. HS
Duloxetine 60mg. BID
It is my opinion that Damaris McCalley would benefit from a psychopharmaceutical medication protocol review. In addition, it appears prudent to restrict Ms. McCalley's involvement in complex tasks until further understanding can be arrived at regarding her complex psychological profile. Conversely, Ms. McCalley appears to understand and convey competency regarding matters such as childcare and ADL's.

Sincerely,
Jack Cockburn, Ph.D.

_____

# Exhibit 2

"The granting of a court appointed attorney is not mine to request. As per our discussion I will only state what was said either verbally or in writing and render an opinion based on that information. If you read the last paragraph I stated that you should avoid complex matters while acknowledging your ability to handle tasks like childcare. The rest of your legal obstacles are going to be, probably, under the authority of the judge. That said I don't foresee someone in that position asserting that you are capable of handling a legal matter all things considered. But I'm not a lawyer. Feel free to lmk how this unfolds."
 -Jack Cockburn PHD in Email to Damaris McCalley

---

E-Filed and Signed on Weds. 3:12 pm , November 25th,2020
Pro Se Litigant Who Desperately Needs An Attorney
Damaris McCalley
damaris.mccalley@gmail.com
(682)552-6623
1335 Lark Lane
Lewisville Texas 75077

# **Exhibit 3**

Patient Medical Records
UT Southwestern Medical Center
University Hospitals and Clinics
Dallas, TX 75390-8525

McCalley, Damaris P
MRN: 72811610. DOB: 1/3/1988, Sex: F
Visit date: 6/12/2019

Family and Employment History (continued)

All MyChart Messages from This Encounter (continued)
Sorry to hear you're still having panic attacks and nightmares. I want to talk more about this at our appointment next Wednesday. But in the meantime I encourage you to try guided relaxation tools and breathing exercises. This website has some info on mindfulness meditation and a breathing exercise about halfway down that can sometimes help when anxiety is overwhelming. https://www.mindful.org/meditation/mindfulness-getting-started/
Like I said, I want to talk more about how you've been doing at our next appointment but I hope that something like this can be a helpful.
Thanks,
Jessica

--- Message ---
From: Damaris P. McCalley
Sent: 6/13/2019 11:14 AM CDT
To: Jessica Herbst, LCSW
Subject: RE: The clip on my kidney

No I don't feel better because it's a UT Southwestern doctor who has been lying to me. He has access to my medical records and he has been telling me my pain is not urological and there was never a clip. It punched me in the gut to know wherever I go, Cox may still be affecting my care through his friends and there's nothing I can do about it. I'm having bad panic attacks and nightmares.
--- Message ---
From: Jessica Herbst LCSW
Sent: 6/13/2019 7:43 AM CDT
To: Damaris P. McCalley
Subject: RE: The clip on my kidney
Good morning Damaris
It sounds like its continued to be a difficult experience for you. I hope you're feeling some better after finding it.
I hope you're doing what you can to take care of yourself during this time - self care, leaning on your support system, spending enjoyable time with your kids.
I will forward this to Dr. Westover to let him know as well. Thanks for keeping us in the loop!
Jessica

--- Message ---
From: Damaris P. McCalley
Sent: 6/12/2019 9:28 PM CDT
To: Jessica Herbst, LCSW
Subject: The clip on my kidney

I found the clip on my kidney today by speaking with the head of Radiology at Methodist Mansfield hospital. She showed me that the clip has always been there, it was there on the entrance CT but it was still there after they placed the nephrostomy tube. If I am to believe them then Dr. Van Loben apparently removed it during surgery when I was under anesthesia and lied to me about it. That honestly made sense, him and Dr. Martha Storie kinda freaked out when I went to see them both in the same day to ask them about the clip. She looked at the scans but said it wasn't there then called her while I was in the office highly concerned. They both have been saying my problems are NOT urological in my medical chart. She said I had "muscular-skeletal pain". When I kept contacting her saying I'm having UTI issues, pain which amazing yeah it's not urological. We located you for a UTI. Move on. Please show this to Dr. Westover. I hope I can trust you two to be honest with me, it's scary...

--- Message ---
Damaris P. McCalley                    Jessica Herbst, LCSW                6/13/2019 1:14 AM
No I don't feel better because it's a UT Southwestern doctor who has been lying to me. He has access to my medical records and he has been telling me my pain is not urological and there was never a clip. It punched me in the gut to know wherever I go, Cox may still be affecting my care through his friends and there's nothing I can do about it. I'm having bad panic attacks and nightmares.

--- Message ---
From: Jessica Herbst LCSW

Note: Substance Abuse Therapy
Records are not part of the medical
record and require additional
authorization.

CAUSE NO. 02-20-00411
formerly
 017-312809-19

PLAINTIFF:                                              IN THE DISTRICT COURT OF
DAMARIS MCCALLEY                                        TARRANT COUNTY, TEXAS
VS:
DEFENDANTS:
DR. CLIFTON LYNDELL COXII;                             17th Judicial District Court
METHODIST SOUTHLAKE HOSPITAL;
RADIOLOGY ASSOCIATES OF NORTH TEXAS
FOR SCOTT SMITH AND DUSTIN DUY NGUYEN;
DR. ABIODUN;
DR. YAIR LOTAN;
AND UT SOUTHWESTERN HOSPITAL

---

## <u>No ADA Coordinator or Accommodations Available At 2nd Court Of Appeals But I Need Accomodation Under the ADA</u>

I'm Filing this in the Federal Suit as an exhibit as my symptoms and need for accommodations are the same in each case. For that reason I am also filing it in the state case and will file it in the removed state case once I go to Fed Court to file it. Today I called the Second Court of Appeals explaining I do not understand the formula and format of the appeal and am having trouble reading and interpreting the lengthy documents of rules due to my learning/ mental disabilities. The clerk agreed it is difficult even for an ordinary individual without a learning disability so she couldn't even imagine how hard it was for me so I asked if they have an ADA Coordinator, Attorney or Interpreter who can help me. She said they do not have an ADA Coordinator. I explained that the Judge the Court of Appeals sent me to was a Judge who illegally dismissed my civil case With a Conflict of Interest in my case and I warned the 2nd Court of Appeals that she would not grant me any accommodations under the ADA as she had already denied me technical help etc.  It seems that would be prejudicial to people with learning or mental disabilities if no accommodations can be made for people with Disabilities under Federal Law. I have already asked Disability Rights Texas for help and appealed their determination NOT to help me

access my rights in Texas and Federal Institutions when they had previously told me they would. Legal Aid of North Texas said they are not allowed to help in cases of personal injury. I have already called the Texas Bar Referral Line and nobody can help me due to Tort Reform, me not having all my medical records etc.

I have explained the premise of my appeal to the 2nd Court several times. I cannot understand the Appellate process and have nobody to help me. Judge Melody Wilkinson did NOT address the rights I have under the Americans With Disabilities Act or why she thought she was above it or did not have to provide me with Accommodations under the Act that her court allocates funding for. She accepted that I was disabled with mental and physical disabilities as she accepted the fact I get SSI but refused to apply the Americans With Disabilities Act standards to the hearing and refused to make procedural changes to allow me to use the restroom or respond to her questions the way my severe anxiety which was triggered at the hearing allowed. She refused to explain what I didn't understand. I told her I couldn't write a perfect brief due to my Disabilities and she didn't say I could because she knew I can't. I told her that to deny me an attorney would be to deny me my right to appeal my case which was wrongfully dismissed. I have the right to appeal as anyone does and a normal brain might be able to understand. She denied me an attorney to deny my ability to appeal the case and it was done so under Color of Law. Look at my Diagnoses and these articles I found online describing the problems they cause me. I cannot perform good legal work with them accounted for. The Second Court of Appeals made me perform in front of my abuser Melody Wilkinson who I already sued in Federal Court for denying me Due Process with no Legal Counsel to calm me, guide me and protect me. The Second Court of Appeals purposely sent me into an emotional trap to trigger my disorders and succeded when I had an emotional outburst which almost jailed me at the end of the hearing. Giving me extra time will not change my brain to suddenly be capable of what an ordinary person or attorney is. I need an attorney to interpret and communicate for me what I do not understand and to stop constantly traumatizing myself with all these legal filings when I have a disorder relating to them.

See Exhibits 1-7 on my other diagnoses (you already have pages of them) and their symptoms. As there is no coordinator at the court the Judges must find a solution.

Prayer For Relief: Give me the accomodations my illnesses Require under the ADA so I can write a perfect appeal as your court insists on. I am not capable of this s in my case the accomodation I need is an attorney as nobody else can file except a pro se litigant or an attorney. My medical providers already said so. DO NOT respond to this under any other standard accept to accommodate me in accordance with the ADA. The Trial Court DID NOT follow ADA Guidelines and held me to the Indegence standard NOT the ADA. Thus her orders should be disregarded and are invalid. The Second Court of Appeal Orders are also invalid as they do not address the context of my request for an attorney which is the fact I have a mental disorder and need someone with a fully functioning brain to deal with the courts requirements as the court refused to lower them as required by both the ADA and Pro Se Litigants guidelines. Extraordinary circumstances or proof are not a requirement in an ADA case and it is NOT my burden of proof. It was Wilkinsons burden of proof and she knew that but failed to meet it and gave me bad legal advice to direct my arguments to meet a false standard of proof when she's not even my attorney. She's not supposed to be doing that which is one of the many reasons she is being sued.

_____

Certified as Served on All Parties electronically at 5:38 pm June 22nd, 2021.

_____

E-Filed signed, sworn as true to my firsthand knowledge and recollection

Damaris McCalley
Pro Se Litigant
(682)552-6623
damaris.mccalley@gmail.com
1335 Lark Lane
Lewisville Texas 75077

Exhibit 1

One of the key features of an acute stress reaction is that, in common with post-traumatic stress disorder (PTSD), it is believed to arise as a direct consequence of an exceptionally stressful life event. The stressful events or the continuing unpleasant circumstances are the primary causal factor - quite simply, the disorder would not occur without their effect. Acute stress reaction, again in common with conditions such as PTSD and adjustment disorders, is often regarded as a maladaptive response to severe or continued stress which then interferes with coping mechanisms[2].

## Traumatic events and risk factors

Traumatic events may vary hugely and are specific to the individual. Usually the precipitating event is, or is perceived as, life-threatening. The point about perception is clear - a replica gun couldn't kill someone but if someone felt they were at risk of being shot this would very likely be a traumatic event to them.

Other typical examples include serious accidents, natural disasters, violent assaults and rarer events such as terrorist incidents. It can also result from sexual assault, following rape or child sexual abuse. The trauma can be ongoing such as in the cases of domestic violence or recurring sexual abuse. People experiencing acute traumatic stress may be injured as a result of the event, or they may be witnesses to the traumatic event.

This may mean avoiding people, conversations, or other situations, as they cause distress and anxiety.

- Reckless or aggressive behaviour that may be self-destructive.

Exhibit 2

- Feeling emotionally numb and detached from others.

- Physical symptoms such as:
    - A 'thumping heart' (palpitations).

    - A feeling of sickness (nausea).

3:52 ▶ 💬 📞 📷 📷 ⊕ •          🔓 🔋 Ⓝ 📶 📶 19% 🔋



B+ https://service.emedpractic   

**⊘MedicalPractice**   Premier Care Behavioral Health          Welcome Mccalley Damaris | Sign Out

**Menu**

| Menu |
|---|
| Appointment Details |
| Personal Details |
| Insurance Details |
| Contacts |
| Medications |
| **Assessments** |
| Allergies |
| Labs And Radiology |
| Follow up |
| SecureMessaging |
| Add Agent |
| Reset Password |
| Documents |
| Health Maintenance |

**Patient Assessments**

Active Problems:

| Problem Code | Problem | Started On | Education Material | Resolved On |
|---|---|---|---|---|
| F43.0 | Acute stress reaction | 12-15-2020 | 🔵📖 | |
| F41.0 | Panic disorder without agoraphobia | 11-16-2020 | 🔵📖 | |
| F90.0 | Attention-deficit hyperactivity disorder, predominantly inattentive type | 11-16-2020 | 🔵📖 | |
| F31.81 | Bipolar II Disorder | 11-16-2020 | 🔵📖 | |

InActive Problems:

No InActive Problems Found.

# Exhibit 3

**ACTIVE MEDICATIONS:**

| | | |
|---|---|---|
| Adderall 30MG Tablet | 1/2 po BID | |
| Buspirone Hcl 15MG Tablet | 1 po BID | |
| Amitriptyline Hcl 75MG Tablet | 1 at bedtime | Stop - Another provider changed |
| Oxcarbazepine 300MG Tablet | 3 at bedtime | |

**DSM V DIAGNOSIS:**

**DSM V:**
 Bipolar II Disorder(**F31.81**)
 Panic disorder without agoraphobia(**F41.0**)
 Attention-deficit hyperactivity disorder, predominantly inattentive type(**F90.0**)

**DSM V DIAGNOSIS:**

**Axis I** : Bipolar II Disorder(**F31.81**)
 Panic disorder without agoraphobia(**F41.0**)
 Attention-deficit hyperactivity disorder, predominantly inattentive type(**F90.0**)

**Axis II** :
**Axis III** :
**Axis IV** :
**Axis V** :

**ALLERGIES:**

**Drug Allergies:**
• Tramadol
 **Symptoms:** Hives,Itching.

**PRESCRIPTION ORDERS:**

| | | | |
|---|---|---|---|
| Cymbalta 60MG | Take 2 tab by mouth at bedtime | 0 Refills | # 60(Sixty), |
| Abilify 10MG | 1 daily at bedtime | 0 Refills | # 30(Thirty), |
| Amitriptyline Hcl 100MG | 1 daily at bedtime | 0 Refills | # 30(Thirty), |

**REFERRAL**

Referred To: TMS/Spravato ( Bashir Ahmed )

Diagnosis: Bipolar II Disorder (F31.81) ,Attention-deficit hyperactivity disorder, predominantly inattentive type (F90.0) ,Panic disorder without agoraphobia (F41.0) ,Acute stress reaction (F43.0)

**PLAN:**

At this time patient to stop trazodone, start Abilify 10mg qhs, increase Amitriptyline to 100mg qhs, and continue other medication at current dose. Labs ordered: CBC w/diff, CMP, TSH, lipid panel, vit. D and HGBAIC. Patient was explained the risk, potential side effects, benefits, and available alternatives to treatment, and agrees with the treatment. The importance of compliance was discussed with the patient. Positive Behavioral reinforcement. CBT recommended.

**FOLLOWUP:**

FollowUp: After 1 Months.

**BILLING SERVICES:**

99214 -- established Patient / Moderate -- F31.81=F90.0=F41.0,
90833 -- 30-minute Psychotherapy Add-on Code -- F31.81=F90.0=F41.0

Electronically signed by: OGALA FAITH, PMHNP on 06/17/2021




Exhibit 4



**Premier Care Behavioral Health of McKinney**
**4510 Medical Center Drive Suite 206**
**McKinney, TX 75069-3464**
**ph: (469) 631-0935 fax: (940) 435-7059**



| | | | |
|---|---|---|---|
| **Name:** Damaris Mccalley | **Sex:** FeMale **DOB:** 1/3/1988 | **Age:** 33 | **Service Date:** 06/17/2021 |
| **Provider:** OGALA FAITH, PMHNP | **Chart#:** 2943 | **Assistant MA:** Jasmine Jones | |

## CHIEF COMPLAINT:

The patient is being seen for medication management.

## HISTORY OF PRESENT ILLNESS:

Patient worsening depression and anxiety due to ongoing litigation. She reports mood swing, irritability and anger. Patient remains adherent to the medication regimen and denies any side effect. She states she will like to try TMS. Patient report poor appetite. Patient reports she is unable to fall asleep and stay asleep. She states trazodone is not helping and it makes her groggy in the morning. Patient denies any psychotic problems or symptoms. Patient verbalized death wish but vehemently denies homicidal Ideation, intent, or plan. Medication complaint education was provided; active listening, validation of feelings, and supportive counseling provided.

# Exhibit 5



 https://service.emedpractic   ⋮

| bin Problems: | | | | |
|---|---|---|---|---|
| blem Code | Problem | Started On | Education Material | R |
| i | Acute stress reaction | 12-15-2020 | ⊍ 🖻 | |

**Problems:** ✕

**Title:** MedlinePlus Connect
**Subtitle:** MedlinePlus Connect results for ICD-10-CM F43.0
**Author:** U.S. National Library of Medicine
**Author url:** https://www.nlm.nih.gov

**Title:** Panic Disorder
**Link:** https://medlineplus.gov/panicdisorder.html?utm_source=mplusconnect&utm_medium=service
**Summary:**

Panic disorder is a type of anxiety disorder. It causes panic attacks, which are sudden feelings of terror when there is no real danger. You may feel as if you are losing control. You may also have physical symptoms, such as

Fast heartbeat
Chest or stomach pain
Breathing difficulty
Weakness or dizziness
Sweating
Feeling hot or a cold chill
Tingly or numb hands

Panic attacks can happen anytime, anywhere, and without warning. You may live in fear of another attack and may avoid places where you have had an attack. For some people, fear takes over their lives and they cannot leave their homes.

Panic disorder is more common in women than men. It usually starts when people are young adults. Sometimes it starts when a person is under a lot of stress. Most people get better with treatment. Therapy can show you how to recognize and change your thinking patterns before they lead to panic. Medicines can also help.

NIH: National Institute of Mental Health

Ⅲ          ◯          ❮

## Exhibit 6

- Hot temper
- Trouble coping with stress

## What's typical behavior and what's ADHD?

Almost everyone has some symptoms similar to ADHD at some point in their lives. If your difficulties are recent or occurred only occasionally in the past, you probably don't have ADHD. ADHD is diagnosed only when symptoms are severe enough to cause ongoing problems in more than one area of your life. These persistent and disruptive symptoms can be traced back to early childhood.

Diagnosis of ADHD in adults can be difficult because certain ADHD symptoms are similar to those caused by other conditions, such as anxiety or mood disorders. And many adults with ADHD also have at least one other mental health condition, such as depression or anxiety.

## When to see a doctor

If any of the symptoms listed above continually disrupt your life, talk to your doctor about whether you might have ADHD.

Different types of health care professionals may diagnose and supervise treatment for ADHD. Seek a provider who has training and experience in caring for adults with ADHD.

 **Request an Appointment at Mayo Clinic**

Exhibit 7

## Symptoms

Some people with ADHD have fewer symptoms as they age, but some adults continue to have major symptoms that interfere with daily functioning. In adults, the main features of ADHD may include difficulty paying attention, impulsiveness and restlessness. Symptoms can range from mild to severe.

Many adults with ADHD aren't aware they have it — they just know that everyday tasks can be a challenge. Adults with ADHD may find it difficult to focus and prioritize, leading to missed deadlines and forgotten meetings or social plans. The inability to control impulses can range from impatience waiting in line or driving in traffic to mood swings and outbursts of anger.

Adult ADHD symptoms may include:

- Impulsiveness
- Disorganization and problems prioritizing
- Poor time management skills
- Problems focusing on a task
- Trouble multitasking
- Excessive activity or restlessness
- Poor planning
- Low frustration tolerance
- Frequent mood swings
- Problems following through and completing tasks

CAUSE NO. 02-20-00411
formerly
017-312809-19

PLAINTIFF:                                          IN THE DISTRICT COURT OF
DAMARIS MCCALLEY                                    TARRANT COUNTY, TEXAS
VS:
DEFENDANTS:
DR. CLIFTON LYNDELL COXII;                          17th Judicial District Court
METHODIST SOUTHLAKE HOSPITAL;
RADIOLOGY ASSOCIATES OF NORTH TEXAS
FOR SCOTT SMITH AND DUSTIN DUY NGUYEN;
DR. ABIODUN;
DR. YAIR LOTAN;
AND UT SOUTHWESTERN HOSPITAL

---

## The Unlawful Denial Of Requested Accommodations For A Person With Disability

The state or a governmental body may not discriminate against a person with DOCUMENTED disabilities and medical diagnosis who needs assistance in State, Federal and public programs and buildings . I was NOT denied accomodations for a person with Disabilities by Wilkinson who already broke Federal Law by holding ex parte hearings she knew I had medical reasons why I couldn't attend first thing that morning. She denied it under the "extraordinary proof" requirement, NOT found in the Americans With Disabilities Act but in case law surrounding Financial Indigence because no such extraordinary proof is required by the ADA. She had documentation that I have mental disabilities and letters from my healthcare providers saying medically what I am and am not capable of doing and the court must issue me accommodations by an attorney. The appellate court seeks to bar my appeal because I cannot understand the formula of Appellate Brief due to my mental disabilities and that is unconstitutional which is why I am moving the case to Federal Court and suing the state. I requested ACCOMMODATION so I can understand an appellate brief by requesting an attorney and was denied for no good reason as in my brief with the headline stating "No Extraordinary Proof Is Required" laid out in plain English and was served on the appellate court clerk. They have barred my ability they at first said I could have which was a waiver of perfection. They are doing so to prohibit my Federally Protected

Right to argue my appeal as they are making me stick to a structure I cannot comprehend due to disability... Here's my Diagnoses with Premiere Behavioral Health. Judge Wilkinson would not even let me use the bathroom in peace for my medically documented Crohn's Disease. That was illegal. It is why she is being sued. Furthermore she was already under notice of suit at the time of the hearing and needed to recuse as I reasonably questioned her partiality.

I cannot create a brief I am not mentally capable of producing or understanding without anyone to explain it to me. I requested an oral hearing with an appellate court Judge due to my disability or waiver of perfection and was denied by the court clerk. None of their orders are signed by judges. The Court Clerk (I am not sure which) Is of course blocking my access to appellate Judge and an appeal as Wilkinson and Evans both broke rules on the 60 days law and held ex parte hearings so by law I am entitled to appeal. Also an order needs to be signed by a judge to be lawful, there's no signature on the order from allegedly the Appellate Court. The appellate court or clerks office is breaking the law as they need to tell me who is blocking my access to appeal under the Americans With Disabilities Act and specifically discuss why they cannot grant me the accommodations required by a person with mental disabilities who did not graduate High School.

_____

Prayer For Relief: Adhere to Federal Law Regarding Accommodations For Persons With Disabilities Immediately and grant me the medically documented accomodations requested by my medical professionals, including Beth Morale. I am not mentally capable of understanding the complicated structure of an appellate brief without a court aid attorney to interpret it for me. The Appellate Court Orders not one of them mentioned or instructed Melody Wilkinson to grant me attorney under the Americans With Disabilities Act which was the context I requested it in and lied stating that they were not allowed to grant Court Appointed Attorney when in fact ALL courts are instructed to comply with the Americans With Disabilities Act and if I have a mental disability and am being treated for such, and require help accessing court programs etc. they DID and DO have the power to comply with the act if I cannot understand or be understood or meet NORMAL PEOPLE REQUIREMENTS otherwise. I have several times tried to submit "Brief" and been told I am deficient by the Appellate Clerk. Duh,

my brain doesn't work like an ordinary persons and is medically documented as such so I need someone with a good brain to help me understand the rules in the same way a blind person needs an interpreter. I don't know who the "authorities" are in my case. I have stated the substantive matters of the appeal on the fact that I do not have all my medical records as required by Chapter 74 Law and both Judges Evans and Wilkinson broke the 60 days Law and had illegal Ex Parte Hearings With Defendants and counsel to the Defense and my Right To Due Process was violated, HIPAA was violated as was the Equal Protections Clause. Furthermore I cannot be my own Attorney when the Defendants violate Federal Rules of Discovery 26 by barring me asking questions of my physicians about what they did to me under anaesthesia which is NOT in the operative reports. That is a crime of course.

---

Certified as Served on all Parties at 9:34pm, June 21, 2021.

---

E-Filed and attested to under Covid-19 rules on June 21,2021
Damaris McCalley
Pro Se Litigant
(682)552-6623
damaris.mccalley@gmail.com
1335 Lark Lane
Lewisville Texas 75077

# EXHIBIT 1



2:25

https://patientportal.emedp   (27)

Premier Care Behavioral Health

**Patient Assessments**

**Active Problems:**

| Problem Code | Problem |
|---|---|
| F43.0 | Acute stress reaction |
| F41.0 | Panic disorder without agoraphobia |
| F90.0 | Attention-deficit hyperactivity disorder, predominantly inattentive type |
| F31.81 | Bipolar II Disorder |

**InActive Problems:**

No InActive Problems Found.